

Paul L. McDonald
P L McDONALD LAW LLC
1800 JFK Boulevard, Suite 300
Philadelphia, PA 19103
Tel:     (267) 238-3835
Fax:     (267) 238-3801
Email: paul@plmcdonaldlaw.com

*Counsel for Plaintiff and the Proposed Collective*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| SAMANTHA SACKOS, <br> on her own behalf and on behalf of <br> similarly situated persons, <br><br>             Plaintiff, <br><br> v. <br><br> NATIONAL COLLEGIATE ATHLETIC <br> ASSOCIATION (a/k/a the "NCAA"); <br> and NCAA Division I Member Schools: | Honorable <br><br> Civil Action No. <br><br> COMPLAINT AND JURY DEMAND <br><br> **1 : 14 -cv- 1 7 1 0 WTL -MJD** |

ABILENE CHRISTIAN UNIVERSITY;
UNIVERSITY OF AKRON;
UNIVERSITY OF ALABAMA;
ALABAMA A&M UNIVERSITY;
ALABAMA STATE UNIVERSITY;
UNIVERSITY OF ALABAMA AT BIRMINGHAM;
UNIVERSITY AT ALBANY;
ALCORN STATE UNIVERSITY;
AMERICAN UNIVERSITY;
APPALACHIAN STATE UNIVERSITY;
UNIVERSITY OF ARIZONA;
ARIZONA STATE UNIVERSITY;
ARKANSAS STATE UNIVERSITY;
UNIVERSITY OF ARKANSAS, FAYETTEVILLE;
UNIVERSITY OF ARKANSAS, LITTLE ROCK;
UNIVERSITY OF ARKANSAS, PINE BLUFF;
AUBURN UNIVERSITY;
AUSTIN PEAY STATE UNIVERSITY;
BALL STATE UNIVERSITY;
BAYLOR UNIVERSITY;

-1-

BELMONT UNIVERSITY;
BETHUNE-COOKMAN UNIVERSITY;
BINGHAMTON UNIVERSITY;
BOISE STATE UNIVERSITY;
BOSTON COLLEGE;
BOSTON UNIVERSITY;
BOWLING GREEN STATE UNIVERSITY;
BRADLEY UNIVERSITY;
BRIGHAM YOUNG UNIVERSITY;
BROWN UNIVERSITY;
BRYANT UNIVERSITY;
BUCKNELL UNIVERSITY;
UNIVERSITY AT BUFFALO,
    THE STATE UNIVERSITY OF NEW YORK;
BUTLER UNIVERSITY;
CALIFORNIA POLYTECHNIC STATE
    UNIVERSITY;
CALIFORNIA STATE UNIVERSITY,
    BAKERSFIELD;
CALIFORNIA STATE UNIVERSITY, FRESNO;
CALIFORNIA STATE UNIVERSITY,
    FULLERTON;
CALIFORNIA STATE UNIVERSITY,
    NORTHRIDGE;
CALIFORNIA STATE UNIVERSITY,
    SACRAMENTO;
UNIVERSITY OF CALIFORNIA, BERKELEY;
UNIVERSITY OF CALIFORNIA, DAVIS;
UNIVERSITY OF CALIFORNIA, IRVINE;
UNIVERSITY OF CALIFORNIA, LOS ANGELES;
UNIVERSITY OF CALIFORNIA, RIVERSIDE;
UNIVERSITY OF CALIFORNIA,
    SANTA BARBARA;
CAMPBELL UNIVERSITY;
CANISIUS COLLEGE;
UNIVERSITY OF CENTRAL ARKANSAS;
CENTRAL CONNECTICUT STATE
    UNIVERSITY;
UNIVERSITY OF CENTRAL FLORIDA;
CENTRAL MICHIGAN UNIVERSITY;
COLLEGE OF CHARLESTON;
CHARLESTON SOUTHERN UNIVERSITY;
CHICAGO STATE UNIVERSITY;
UNIVERSITY OF CINCINNATI;
THE CITADEL;
CLEMSON UNIVERSITY;
CLEVELAND STATE UNIVERSITY;
COASTAL CAROLINA UNIVERSITY;

-2-

COLGATE UNIVERSITY;
UNIVERSITY OF COLORADO, BOULDER;
COLORADO STATE UNIVERSITY;
COLUMBIA UNIVERSITY;
UNIVERSITY OF CONNECTICUT;
COPPIN STATE UNIVERSITY;
CORNELL UNIVERSITY;
CREIGHTON UNIVERSITY;
DARTMOUTH COLLEGE;
DAVIDSON COLLEGE;
UNIVERSITY OF DAYTON;
UNIVERSITY OF DELAWARE;
DELAWARE STATE UNIVERSITY;
UNIVERSITY OF DENVER;
DEPAUL UNIVERSITY;
UNIVERSITY OF DETROIT MERCY;
DRAKE UNIVERSITY;
DREXEL UNIVERSITY;
DUKE UNIVERSITY;
DUQUESNE UNIVERSITY;
EAST CAROLINA UNIVERSITY;
EAST TENNESSEE STATE UNIVERSITY;
EASTERN ILLINOIS UNIVERSITY;
EASTERN KENTUCKY UNIVERSITY;
EASTERN MICHIGAN UNIVERSITY;
EASTERN WASHINGTON UNIVERSITY;
ELON UNIVERSITY;
UNIVERSITY OF EVANSVILLE;
FAIRFIELD UNIVERSITY;
FARLEIGH DICKINSON UNIVERSITY;
UNIVERSITY OF FLORIDA;
FLORIDA A&M UNIVERSITY;
FLORIDA ATLANTIC UNIVERSITY;
FLORIDA GULF COAST UNIVERSITY;
FLORIDA INTERNATIONAL UNIVERSITY;
FLORIDA STATE UNIVERSITY;
FORDHAM UNIVERSITY;
FURMAN UNIVERSITY;
GARDNER-WEBB UNIVERSITY;
GEORGE MASON UNIVERSITY;
GEORGE WASHINGTON UNIVERSITY;
GEORGETOWN UNIVERSITY;
UNIVERSITY OF GEORGIA;
GEORGIA INSTITUTE OF TECHNOLOGY;
GEORGIA SOUTHERN UNIVERSITY;
GEORGIA STATE UNIVERSITY;
GONZAGA UNIVERSITY;
GRAMBLING STATE UNIVERSITY;

www.StudentAthleteEquity.com

GRAND CANYON UNIVERSITY;
HAMPTON UNIVERSITY;
UNIVERSITY OF HARTFORD;
HARVARD UNIVERSITY;
UNIVERSITY OF HAWAII, MANOA;
HIGH POINT UNIVERSITY;
HOFSTRA UNIVERSITY;
COLLEGE OF THE HOLY CROSS;
UNIVERSITY OF HOUSTON;
HOUSTON BAPTIST UNIVERSITY;
HOWARD UNIVERSITY;
UNIVERSITY OF IDAHO;
IDAHO STATE UNIVERSITY;
ILLINOIS STATE UNIVERSITY;
UNIVERSITY OF ILLINOIS,
   URBANA-CHAMPAIGN;
UNIVERSITY OF ILLINOIS AT CHICAGO;
UNIVERSITY OF THE INCARNATE WORD;
INDIANA STATE UNIVERSITY;
INDIANA UNIVERSITY, BLOOMINGTON;
INDIANA UNIVERSITY –
   PURDUE UNIVERSITY, FORT WAYNE;
INDIANA UNIVERSITY –
   PURDUE UNIVERSITY AT INDIANAPOLIS;
IONA COLLEGE;
UNIVERSITY OF IOWA;
IOWA STATE UNIVERSITY;
JACKSON STATE UNIVERSITY;
JACKSONVILLE STATE UNIVERSITY;
JACKSONVILLE UNIVERSITY;
JAMES MADISON UNIVERSITY;
UNIVERSITY OF KANSAS;
KANSAS STATE UNIVERSITY;
KENNESAW STATE UNIVERSITY;
KENT STATE UNIVERSITY;
UNIVERSITY OF KENTUCKY;
LA SALLE UNIVERSITY;
LAFAYETTE COLLEGE;
LAMAR UNIVERSITY;
LEHIGH UNIVERSITY;
LIBERTY UNIVERSITY;
LIPSCOMB UNIVERSITY;
LONG BEACH STATE UNIVERSITY;
LONG ISLAND UNIVERSITY, BROOKLYN;
LONGWOOD UNIVERSITY;
UNIVERSITY OF LOUISIANA AT LAFAYETTE;
UNIVERSITY OF LOUISIANA AT MONROE;
LOUISIANA STATE UNIVERSITY;

www.StudentAthleteEquity.com

LOUISIANA TECH UNIVERSITY;
UNIVERSITY OF LOUISVILLE;
LOYOLA MARYMOUNT UNIVERSITY;
LOYOLA UNIVERSITY CHICAGO;
LOYOLA UNIVERSITY MARYLAND;
UNIVERSITY OF MAINE, ORONO;
MANHATTAN COLLEGE;
MARIST COLLEGE;
MARQUETTE UNIVERSITY;
MARSHALL UNIVERSITY;
UNIVERSITY OF MARYLAND
  EASTERN SHORE;
UNIVERSITY OF MARYLAND,
  BALTIMORE COUNTY;
UNIVERSITY OF MARYLAND,
  COLLEGE PARK;
UNIVERSITY OF MASSACHUSETTS, AMHERST;
UNIVERSITY OF MASSACHUSETTS, LOWELL;
MCNEESE STATE UNIVERSITY;
UNIVERSITY OF MEMPHIS;
MERCER UNIVERSITY;
UNIVERSITY OF MIAMI;
MIAMI UNIVERSITY;
UNIVERSITY OF MICHIGAN;
MICHIGAN STATE UNIVERSITY;
MIDDLE TENNESSEE STATE UNIVERSITY;
UNIVERSITY OF MINNESOTA, TWIN CITIES;
UNIVERSITY OF MISSISSIPPI;
MISSISSIPPI STATE UNIVERSITY;
MISSISSIPPI VALLEY STATE UNIVERSITY;
MISSOURI STATE UNIVERSITY;
UNIVERSITY OF MISSOURI, COLUMBIA;
UNIVERSITY OF MISSOURI-KANSAS CITY;
MONMOUTH UNIVERSITY;
UNIVERSITY OF MONTANA;
MONTANA STATE UNIVERSITY-BOZEMAN;
MOREHEAD STATE UNIVERSITY;
MORGAN STATE UNIVERSITY;
MOUNT ST. MARY'S UNIVERSITY;
MURRAY STATE UNIVERSITY;
UNIVERSITY OF NEBRASKA, LINCOLN;
UNIVERSITY OF NEBRASKA, OMAHA;
UNIVERSITY OF NEVADA, LAS VEGAS;
UNIVERSITY OF NEVADA;
UNIVERSITY OF NEW HAMPSHIRE;
NEW JERSEY INSTITUTE OF TECHNOLOGY;
UNIVERSITY OF NEW MEXICO;
NEW MEXICO STATE UNIVERSITY;

www.StudentAthleteEquity.com

UNIVERSITY OF NEW ORLEANS;
NIAGARA UNIVERSITY;
NICHOLLS STATE UNIVERSITY;
NORFOLK STATE UNIVERSITY;
UNIVERSITY OF NORTH CAROLINA,
    ASHEVILLE;
NORTH CAROLINA A&T STATE UNIVERSITY;
NORTH CAROLINA CENTRAL UNIVERSITY;
NORTH CAROLINA STATE UNIVERSITY;
UNIVERSITY OF NORTH CAROLINA,
    CHAPEL HILL;
UNIVERSITY OF NORTH CAROLINA,
    CHARLOTTE;
UNIVERSITY OF NORTH CAROLINA AT
    GREENSBORO;
UNIVERSITY OF NORTH CAROLINA,
    WILMINGTON;
UNIVERSITY OF NORTH DAKOTA;
NORTH DAKOTA STATE UNIVERSITY;
UNIVERSITY OF NORTH FLORIDA;
UNIVERSITY OF NORTH TEXAS;
NORTHEASTERN UNIVERSITY;
NORTHERN ARIZONA UNIVERSITY;
UNIVERSITY OF NORTHERN COLORADO;
NORTHERN ILLINOIS UNIVERSITY;
UNIVERSITY OF NORTHERN IOWA;
NORTHERN KENTUCKY UNIVERSITY;
NORTHWESTERN STATE UNIVERSITY;
NORTHWESTERN UNIVERSITY;
UNIVERSITY OF NOTRE DAME;
OAKLAND UNIVERSITY;
THE OHIO STATE UNIVERSITY;
OHIO UNIVERSITY;
UNIVERSITY OF OKLAHOMA;
OKLAHOMA STATE UNIVERSITY;
OLD DOMINION UNIVERSITY;
ORAL ROBERTS UNIVERSITY;
UNIVERSITY OF OREGON;
OREGON STATE UNIVERSITY;
UNIVERSITY OF THE PACIFIC;
UNIVERSITY OF PENNSYLVANIA;
PENNSYLVANIA STATE UNIVERSITY;
PEPPERDINE UNIVERSITY;
UNIVERSITY OF PITTSBURGH;
UNIVERSITY OF PORTLAND;
PORTLAND STATE UNIVERSITY;
PRAIRIE VIEW A&M UNIVERSITY;
PRESBYTERIAN COLLEGE;

www.StudentAthleteEquity.com

PRINCETON UNIVERSITY;
PROVIDENCE COLLEGE;
PURDUE UNIVERSITY;
QUINNIPIAC UNIVERSITY;
RADFORD UNIVERSITY;
UNIVERSITY OF RHODE ISLAND;
RICE UNIVERSITY;
UNIVERSITY OF RICHMOND;
RIDER UNIVERSITY;
ROBERT MORRIS UNIVERSITY;
RUTGERS, STATE UNIVERSITY OF
    NEW JERSEY, NEW BRUNSWICK;
SACRED HEART UNIVERSITY;
SAM HOUSTON STATE UNIVERSITY;
SAMFORD UNIVERSITY;
UNIVERSITY OF SAN DIEGO;
SAN DIEGO STATE UNIVERSITY;
UNIVERSITY OF SAN FRANCISCO;
SAN JOSE STATE UNIVERSITY;
SANTA CLARA UNIVERSITY;
SAVANNAH STATE UNIVERSITY;
SEATTLE UNIVERSITY;
SETON HALL UNIVERSITY;
SIENA COLLEGE;
UNIVERSITY OF SOUTH ALABAMA;
UNIVERSITY OF SOUTH CAROLINA,
    COLUMBIA;
SOUTH CAROLINA STATE UNIVERSITY;
UNIVERSITY OF SOUTH CAROLINA UPSTATE;
UNIVERSITY OF SOUTH DAKOTA;
SOUTH DAKOTA STATE UNIVERSITY;
UNIVERSITY OF SOUTH FLORIDA;
SOUTHEAST MISSOURI STATE UNIVERSITY;
SOUTHEASTERN LOUISIANA UNIVERSITY;
UNIVERSITY OF SOUTHERN CALIFORNIA;
SOUTHERN ILLINOIS UNIVERSITY AT
    CARBONDALE;
SOUTHERN ILLINOIS UNIVERSITY
    EDWARDSVILLE;
SOUTHERN METHODIST UNIVERSITY;
THE UNIVERSITY OF SOUTHERN MISSISSIPPI;
SOUTHERN UNIVERSITY, BATON ROUGE;
SOUTHERN UTAH UNIVERSITY;
ST. BONAVENTURE UNIVERSITY;
ST. FRANCIS COLLEGE BROOKLYN;
SAINT FRANCIS UNIVERSITY;
ST. JOHN'S UNIVERSITY;
SAINT JOSEPH'S UNIVERSITY;

www.StudentAthleteEquity.com

SAINT LOUIS UNIVERSITY;
ST. MARY'S COLLEGE OF CALIFORNIA;
ST. PETER'S UNIVERSITY;
STANFORD UNIVERSITY;
STEPHEN F. AUSTIN STATE UNIVERSITY;
STETSON UNIVERSITY;
STONY BROOK UNIVERSITY;
SYRACUSE UNIVERSITY;
TEMPLE UNIVERSITY;
TENNESSEE STATE UNIVERSITY;
TENNESSEE TECHNOLOGICAL UNIVERSITY;
UNIVERSITY OF TENNESSEE AT
    CHATTANOOGA;
UNIVERSITY OF TENNESSEE, KNOXVILLE;
UNIVERSITY OF TENNESSEE AT MARTIN;
TEXAS A&M UNIVERSITY,
    COLLEGE STATION;
TEXAS A&M UNIVERSITY- CORPUS CHRISTI;
TEXAS CHRISTIAN UNIVERSITY;
TEXAS SOUTHERN UNIVERSITY;
TEXAS STATE UNIVERSITY-SAN MARCOS;
TEXAS TECH UNIVERSITY;
UNIVERSITY OF TEXAS AT ARLINGTON;
UNIVERSITY OF TEXAS AT AUSTIN;
UNIVERSITY OF TEXAS AT EL PASO;
UNIVERSITY OF TEXAS, PAN AMERICAN;
UNIVERSITY OF TEXAS AT SAN ANTONIO;
UNIVERSITY OF TOLEDO;
TOWSON UNIVERSITY;
TROY UNIVERSITY;
TULANE UNIVERSITY;
UNIVERSITY OF TULSA;
U.S. AIR FORCE ACADEMY;
U.S. MILITARY ACADEMY;
U.S. NAVAL ACADEMY;
UNIVERSITY OF UTAH;
UTAH STATE UNIVERSITY;
UTAH VALLEY UNIVERSITY;
VALPARAISO UNIVERSITY;
VANDERBILT UNIVERSITY;
UNIVERSITY OF VERMONT;
VILLANOVA UNIVERSITY;
UNIVERSITY OF VIRGINIA;
VIRGINIA COMMONWEALTH UNIVERSITY;
VIRGINIA MILITARY INSTITUTE;
VIRGINIA POLYTECHNIC INSTITUTE &
    STATE UNIVERSITY;
WAGNER COLLEGE;

www.StudentAthleteEquity.com

WAKE FOREST UNIVERSITY;
UNIVERSITY OF WASHINGTON;
WASHINGTON STATE UNIVERSITY;
WEBER STATE UNIVERSITY;
WEST VIRGINIA UNIVERSITY;
WESTERN CAROLINA UNIVERSITY;
WESTERN ILLINOIS UNIVERSITY;
WESTERN KENTUCKY UNIVERSITY;
WESTERN MICHIGAN UNIVERSITY;
WICHITA STATE UNIVERSITY;
COLLEGE OF WILLIAM AND MARY;
WINTHROP UNIVERSITY;
UNIVERSITY OF WISCONSIN-GREEN BAY;
UNIVERSITY OF WISCONSIN, MADISON;
UNIVERSITY OF WISCONSIN, MILWAUKEE;
WOFFORD COLLEGE;
WRIGHT STATE UNIVERSITY;
UNIVERSITY OF WYOMING;
XAVIER UNIVERSITY;
YALE UNIVERSITY; and
YOUNGSTOWN STATE UNIVERSITY;

                            Defendants.

Plaintiff, individually and on behalf of all others similarly situated, by undersigned counsel, for her Complaint herein alleges as follows:

## INTRODUCTION

1.    The Defendants in this action – the National Collegiate Athletic Association ("NCAA") and NCAA Division I Member Schools – have jointly agreed, and conspired, to violate the wage-and-hour provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), as described herein.

2.    The crux of this Complaint is the different, and *better,* treatment that NCAA Division I Member Schools afford student participants in work study part-time employment programs, as compared to treatment of student athletes pursuant to NCAA bylaws.

www.StudentAthleteEquity.com

3.      Student participants in work study part-time employment programs perform non-academic functions for no academic credit at the behest, and for the benefit, of NCAA Division I Member Schools.  For these reasons, work study participants meet the criteria for recognition as temporary employees of NCAA Division I Member Schools under the FLSA, and NCAA Division I Member Schools must, and do, pay them at least the federal minimum-wage of $7.25 an hour.

4.      For instance, "students who work at food service counters or sell programs or usher at athletic events, or who wait on tables or wash dishes in dormitories," are recognized, and paid, as temporary employees of NCAA Division I Member Schools under the FLSA.[1]

5.      Student athletes engage in non-academic performance for no academic credit in athletic competition representing NCAA Division I Member Schools.  By comparison to student participants in work study part-time employment programs, student athletes perform longer, more rigorous hours – nearer full-time as reported in the NCAA *Growth, Opportunities, Aspirations and Learning of Students (GOALS) Study* (2010);[2] are subject to stricter, more exacting supervision by full-time staff of NCAA Division I Member Schools, e.g., coaches and NCAA compliance officers; and confer as many, *if not more*, tangible and intangible benefits on NCAA Division I Member Schools.

6.      Student athletes meet the criteria for recognition as temporary employees of NCAA Division I Member Schools under the FLSA as much as, *if not more than*, work study participants, and, thus, NCAA Division I Member Schools are required by law to pay student athletes at least the federal minimum-wage of $7.25 an hour.

7.      The Defendants have jointly agreed, and conspired, to deprive student athletes of lawfully-earned, modest wages and of equal treatment under law.

---

[1]      U.S. Department of Labor, Wage and Hour Division, Field Operations Handbook § 10b24(b) (Oct. 20, 1993).

[2]      The 2010 NCAA *GOALS Study* reported the following weekly in-season athletic time commitments for student athletes in NCAA Division I:  Football FBS (43.3 hours/week), Baseball (42.1 hours/week), Football FCS (41.6 hours/week), Men's Basketball (39.2 hours/week), Women's Basketball (37.6 hours/week), All Other Women's Sports (33.3 hours/week), and All Other Men's Sports (32.0 hours/week).

www.StudentAthleteEquity.com

8.      Defendants' refusal to recognize, and pay, student athletes as temporary employees of NCAA Division I Member Schools under the FLSA, codified in NCAA bylaws, produces the following perverse result:  work study participants who sell programs or usher at athletic events are paid, on average, $9.03 an hour,[3] but student athletes whose performance *creates* such work study jobs in the athletic department are paid nothing.

9.      Scholarships granted by NCAA Division I Member Schools to *some* student athletes, pursuant to NCAA bylaws, are not compensation for non-academic performance by student athletes because, among other things:

    (i)      scholarships are grants-in-aid and generally not treated as taxable income – to a student athlete, or to any student granted any scholarship;

    (ii)     scholarships are not offered, as a full or partial grant, to every student athlete engaged in non-academic performance;[4]

    (iii)    scholarships are granted to defray the academic cost of attendance and facilitate maintenance of academic eligibility,[5] including, among other things, full-time enrollment,[6] and progress-toward degree requirements;[7]

    (iv)     scholarship funds are not fungible, and cannot be granted for, or spent on, items other than the academic cost of attendance,[8] as is generally the case for any scholarship granted to any student;

---

[3]      In May 2013, the U.S. Department of Labor, Bureau of Labor Statistics reported in its National Industry-Specific Occupational Employment and Wage Estimates, NAICS 611300, that Ushers, Lobby Attendants, and Ticket Takers at Colleges, Universities, and Professional Schools are paid a Mean Hourly Wage of $9.03.

[4]      *See, e.g.,* NCAA Division I Bylaw 15.5.

[5]      *See, e.g.,* NCAA Division I Bylaws 15.2.1, 15.2.2, and 15.2.3.

[6]      NCAA Division I Bylaw 14.2.

[7]      NCAA Division I Bylaw 14.4.

[8]      *See, e.g.,* NCAA Division I Bylaw 15.1.

(v)    scholarships cannot be reduced or cancelled on the basis of athletics ability or performance, nor because of injury or physical condition;[9]

(vi)    scholarships can only be reduced or cancelled if the recipient becomes academically ineligible, engages in fraud or serious misconduct, or withdraws from the program to which the scholarship applies,[10] as is generally the case for any scholarship granted to any student; and

(vii)    any scholarship granted to any student, who also participates in work study, does not relieve the college employer from the obligation to pay at least the federal minimum-wage rate for non-academic performance in work study.

10.    In good faith, undersigned counsel approached the NCAA, and the Commissioners of the NCAA Division I Conferences to which NCAA Division I Member Schools belong, and offered to engage in pre-litigation efforts to resolve claims and place student athletes on par with fellow students, who participate in work study part-time employment programs.  The NCAA maintained that student athletes do not meet criteria for recognition, and pay, as temporary employees under the FLSA as students selling programs and ushering at athletic events do.  None of the Commissioners of the NCAA Division I Conferences responded.  Thus, this Complaint follows.

11.    Plaintiff brings this action on behalf of herself and those similarly situated who elect to opt-in to this action pursuant to the collective action provision of the FLSA, 29 U.S.C. § 216(b), to remedy Defendants' violations of the wage and hour provisions of the FLSA that have deprived Plaintiff and others similarly situated of lawfully-earned, modest wages.

---

[9]    NCAA Division I Bylaw 15.3.4.3.

[10]    NCAA Division I Bylaw 15.3.4.2.

12.     Because Defendants' unlawful conduct has been willful, the appropriate statute of limitations is three years pursuant to 29 U.S.C. § 255(a).

13.     Because Defendants' violations of law are ongoing, Plaintiff seeks injunctive relief to ensure that unlawful policies and practices do not continue.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and 29 U.S.C. § 216(b), in that this action arises under the FLSA.

15.     Venue is proper in the Southern District of Indiana pursuant to 28 U.S.C. § 1391. Each of the Defendants can be found, resides, has an agent, or transacts business in the District, and the unlawful conduct has been, or will be, carried on in part by one or more of the Defendants within the District.

16.     Defendant NCAA, an unincorporated association of more than 1,200 member schools and conferences, regulates athletic competition and championships in 23 sports on behalf of Defendant NCAA Division I Member Schools. NCAA headquarters and its principal place of business are located in the District at 700 W. Washington Street, Indianapolis, IN 46206-6222.

17.     NCAA Bylaws prohibit recognition of student athletes as temporary employees under the FLSA and the lawful payment of modest wages to student athletes, and NCAA Division I Member Schools are compelled to comply under the threat of competition and financial penalties. The annual NCAA convention, during which bylaws, and the bylaw enforcement program, are adopted by NCAA Member Schools has been held in Indianapolis four times since 2000 (2000, 2002, 2006 and 2012) and is again scheduled to be held in Indianapolis in 2018.

18.     The NCAA receives membership dues from NCAA Division I Member Schools.

www.StudentAthleteEquity.com

19.     The NCAA has entered into multi-billion dollar agreements with CBS, ESPN, and Turner Sports to broadcast athletic competitions nationally, including within the District, and multi-million dollar agreements with other corporate partners and sponsors, through which the NCAA receives funds that it then distributes to NCAA Division I Member Schools in direct dollars, championships or services.

20.     The NCAA and its Division I Conferences have conducted and are to conduct, and NCAA Division I Member Schools have participated and are to participate in, post-season and championship segments in Indianapolis, including: Division I Men's Basketball Final Four (2010 and 2015); Division I Women's Basketball Final Four (2016); Big Ten Football Championship (annually, since 2011); and Big Ten Men's Basketball Tournament (2002, 2004, 2006, 2008-2012, 2014, and 2016).

21.     There are six NCAA Division I Member Schools located in the District:  Ball State University; Butler University; the University of Evansville; Indiana University, Bloomington; Indiana State University; and Indiana University – Purdue University at Indianapolis.  The other NCAA Division I Member Schools compete against those member schools located in the District in recruitment of student athletes residing in the District, and in games contested in the District.

## **THE PARTIES**

### **Plaintiff Samantha Sackos**

22.     Plaintiff Samantha Sackos ("Sackos") is an adult individual who resides in Houston, TX.

23.     Sackos was employed by the University of Houston as an unpaid student athlete on the Women's Soccer roster from academic year 2010-11 through academic year 2013-14.

24.     Sackos is a covered employee within the meaning of the FLSA.

25.     Sackos has consented to join this action.  Her Consent to Join form is attached hereto as Exhibit A.

**Defendants**

26.     Plaintiff incorporates by reference the allegations about Defendant NCAA contained in Paragraphs 16 through 20, *supra*, as though fully set forth.

27.     Defendant NCAA Division I Member Schools, which respective principal offices are identified in Exhibit B incorporated herein as though fully set forth, are covered employers within the meaning of the FLSA.

28.     At all relevant times, the NCAA and NCAA Division I Member Schools suffered or permitted, and benefitted from, the unpaid labor of Plaintiff and/or members of the Student Athlete Collective, defined below, although NCAA Division I Member Schools and the NCAA had the power, through the NCAA legislative process, to adopt bylaws recognizing student athletes as temporary employees under the FLSA, and authorizing payment of lawfully-earned, modest wages.

## COLLECTIVE ACTION ALLEGATIONS

29.     Plaintiff brings this action on behalf of herself and all NCAA Division I student athletes participating in women's and men's sports at any time within the statute of limitations and through the date of the final judgment, or of the resolution of any appeal therefrom (the "Student Athlete Collective"). NCAA bylaws prohibiting recognition of student athletes as temporary employees under the FLSA and the lawful payment of modest wages to student athletes, adopted through a legislative process by NCAA Member Schools and enforceable against same under threat of competition and financial penalties, subject all members of the Student Athlete Collective to the same policies and practices, uniformly applied.

30.     Defendants are liable under the FLSA for, *inter alia*, failing to properly classify and compensate Plaintiff and members of the Student Athlete Collective. The Student Athlete Collective consists of many similarly situated individuals who have not been paid by Defendants in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the lawsuit and

-15-

the opportunity to join the lawsuit. Those similarly situated collective members are known to Defendants, are readily identifiable, and can be located through Defendants' records. Notice should be sent to members of the Student Athlete Collective pursuant to 29 U.S.C. § 216(b).

## FACTUAL ALLEGATIONS

**Student Athlete Collective**

31.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 30, *supra*, as though fully set forth.

32.     NCAA Division I Member Schools operate federal and non-federal work study programs (collectively, "work study") on their respective campuses.[11] The broad purpose of work study is to promote part-time employment of students.[12] Because work study participants are students first, NCAA Division I Member Schools limit the number of hours that a student is permitted to work in consideration of student health and academic progress, and students are not permitted to work during scheduled class times. Timesheets showing student hours worked each day are maintained.[13]

33.     Student participants in work study part-time employment programs:

    (i)      perform non-academic functions for no academic credit, including, but not limited to, clerical and technical support, food service, maintenance, sales and customer service in college offices and departments, libraries, dining halls, facilities and bookstores;

    (ii)     are supervised by full-time college staff in the normal course of staff duties; and

    (iii)    confer benefits on the college, and do not impede college operations.

---

[11]    Federal work study is subsidized by federal funding and requires student participants to show financial need. Non-federal work study is not subsidized and does not require student participants to demonstrate financial need.

[12]    *See, e.g.,* 42 U.S.C. § 2751.

[13]    *See, e.g.,* U.S. Department of Education, 2014-2015 Federal Student Aid Handbook, 6-39, 6-42, 6-46.

www.StudentAthleteEquity.com

For these reasons, work study participants meet the criteria for recognition as temporary employees of NCAA Division I Member Schools under the FLSA, and NCAA Division I Member Schools must, and do, pay them at least the federal minimum-wage of $7.25 an hour. [14]

34.     In fact, as reported in May 2013 by the U.S. Department of Labor, Bureau of Labor Statistics in its National Industry-Specific Occupational Employment and Wage Estimates, NAICS 611300, work study participants, on average, are paid above the federal minimum-wage at Colleges, Universities, and Professional Schools.  For instance, the Mean Hourly Wages for common work study part-time employment positions include:

- $ 9.03 for Ushers, Lobby Attendants, and Ticket Takers;
- $10.44 for Tour Guides and Escorts;
- $10.94 for Dishwashers;
- $11.25 for Counter Attendants, Cafeteria, Food Concession, and Coffee Shop;
- $11.71 for Cashiers;
- $12.19 for Retail Sales Workers;
- $12.77 for File Clerks;
- $14.11 for Building and Grounds Cleaning and Maintenance Occupations;
- $14.21 for Receptionists and Information Clerks; and
- $14.56 for Library Assistants, Clerical.

35.     Student athletes engage in non-academic performance for no academic credit in athletic competition representing NCAA Division I Member Schools.

36.     Similar to the limitation on hours that a work study participant is permitted to work for NCAA Division I Member Schools, NCAA Division I Constitution Article 2.14 states the principle governing playing and practice seasons:

> The time required of student athletes for participation in intercollegiate athletics shall be regulated to minimize interference with their opportunities for acquiring a quality education in a manner consistent with that afforded the general student body.

---

[14]    *See, e.g.,* U.S. Department of Labor, Wage and Hour Division, Fact Sheet #71: Internship Programs Under The Fair Labor Standards Act (Apr. 2010).

NCAA bylaws *purport* to restrict class time missed,[15] and limit athletic participation to part-time, i.e., 20 hours a week in-season, 8 hours a week off-season.[16] "Countable athletically related activities" hours ("CARA") are to be recorded daily, similar to timesheets in work study programs.[17]

37.    By comparison to student participants in work study part-time employment programs, student athletes, in fact, perform longer, more rigorous hours.  NCAA bylaws purport to limit athletic participation to part-time, as work study participation is limited, but the NCAA's own report, *Growth, Opportunities, Aspirations and Learning of Students (GOALS) Study* (2010), indicates weekly in-season athletic time commitments for student athletes in Division I near full-time:  Football FBS (43.3 hours/week), Baseball (42.1 hours/week), Football FCS (41.6 hours/week), Men's Basketball (39.2 hours/week), Women's Basketball (37.6 hours/week), All Other Women's Sports (33.3 hours/week), and All Other Men's Sports (32.0 hours/week).

38.    By comparison to work study participants, student athletes are also subject to stricter, more exacting supervision by full-time staff of NCAA Division I Member Schools in the normal course of staff duties, e.g., coaches and NCAA compliance officers, due to the rigors of preparation for, and participation in, athletic competition and of compliance with the myriad of byzantine NCAA bylaws regulating student athlete eligibility.

39.    By comparison to work study participants, student athletes confer as many, *if not more*, tangible and intangible benefits on NCAA Division I Member Schools.  Similar to work study participants, student athletes do not impede college operations.

---

[15]   NCAA Division I Bylaws 17.1.7.6.1 and 17.1.7.6.2.

[16]   NCAA Division I Bylaws 17.1.7.1 and 17.1.7.2.

[17]   NCAA Division I Bylaw 17.1.7.3.4.

www.StudentAthleteEquity.com

40.     Student athletes meet the criteria for recognition as temporary employees of NCAA Division I Member Schools under the FLSA as much as, *if not more than*, work study participants, and, thus, NCAA Division I Member Schools are required by law to pay student athletes at least the federal minimum-wage of $7.25 an hour.

41.     The Defendants have jointly agreed, and conspired, to deprive student athletes of lawfully-earned, modest wages and of equal treatment under law.  NCAA bylaws, and the related bylaw enforcement program, are adopted through a legislative process by NCAA Member Schools. NCAA bylaws prohibit recognition of student athletes as temporary employees under the FLSA and lawful payment of modest wages to student athletes.[18]  Pursuant to the enforcement program, NCAA Division I Member Schools are compelled to comply under the threat of competition and financial penalties, including, but not limited to, the suspension or termination of student athlete eligibility, the suspension of coaching staff, and/or team disqualification from regular season competition and/or post-season and championship segments.[19]

42.     Defendants' refusal to recognize, and pay, student athletes as temporary employees of NCAA Division I Member Schools under the FLSA is not only unlawful, but also arbitrary in that Defendants only prohibit employee recognition, and pay, during playing and practice seasons. By contrast, during the summer, NCAA bylaws permit NCAA Division I Member Schools to employ a select few student athletes as temporary employees under the FLSA in less-demanding roles as counselors for sports camps and clinics,[20] and to pay them, on average, $12.11 an hour.[21]

---

[18]   *See, e.g.,* NCAA Division I Bylaws 12.1.2(a) and 12.1.2.1.1.

[19]   NCAA Division I Bylaws 19.9.5, 19.9.7 and 19.9.8.

[20]   NCAA Division I Bylaw 12.4.3.

[21]   In May 2013, the U.S. Department of Labor, Bureau of Labor Statistics reported in its National Industry-Specific Occupational Employment and Wage Estimates, NAICS 611300, that Recreation and Fitness Workers at Colleges, Universities, and Professional Schools are paid a Mean Hourly Wage of $12.11 an hour.

Recreation and Fitness Workers, among other things, "coach groups or individuals in exercise activities [and] [d]emonstrate techniques and form, observe participants, and explain to them corrective measures necessary to improve their skills."

-19-

43.     The facts that Defendants permit NCAA Division I Member Schools to employ, and pay, a select few student athletes as temporary employees under the FLSA in less-demanding roles as counselors for sports camps and clinics, and that NCAA Division I Member Schools operate work study programs that require hourly timesheets much as NCAA bylaws require daily recording of CARA hours, demonstrate that Defendants understand requirements under the FLSA and could easily comply with such requirements with respect to recognition, and payment, of student athletes as temporary employees during playing and practice seasons.  But, Defendants have willfully refused to comply with the law.

44.     In good faith, undersigned counsel approached the NCAA and offered to engage in pre-litigation efforts to resolve claims and place student athletes on par with fellow students, who participate in work study programs.

45.     In spite of all the evidence to the contrary, described herein, the NCAA maintained that student athletes do not meet the criteria for recognition, and pay, as temporary employees under the FLSA as work study participants do.

46.     The NCAA asserted that NCAA regulated sports are extracurricular activities in the same manner as, "dramatics, student publications, glee clubs, bands, choirs, debating teams, radio stations, intramural and interscholastic athletics … conducted primarily for the benefit of the participants as part of [] educational opportunities, " and, thus exempt from FLSA requirements.[22]

47.     Undersigned counsel responded to the NCAA, "[o]n its face, it's not credible to assert that NCAA regulated sports are akin to, 'dramatics, student publications, glee clubs, bands, choirs, debating teams, radio stations.'"

---

[22]   U.S. Department of Labor, Wage and Hour Division, Field Operations Handbook § 10b03(e) (Oct. 20, 1993).

48.     Undersigned counsel elaborated in response to the NCAA:

> [A]s to DOL Field Operations Handbook, 10b03(e), NCAA regulated sports are
> distinguishable from activities listed.
>
> • Each of the activities listed are organized as student groups, and run by
>   students.
>
> • Full-time university employees are not hired, and paid salaries, for the sole
>   purpose of supervising the activities listed.  If there is faculty involvement
>   (and there often is not), the faculty role is advisory rather than supervisory,
>   is not part of regular duties, and can impede performance of regular duties.
>
>   NCAA regulated sports are supervised by full-time coaching staffs and
>   athletics department personnel as part of their regular duties.
>
> • None of the activities listed is as regulated as NCAA sports.  There is no
>   student group analog to NCAA Division Manuals setting forth a myriad of
>   rules for participant recruitment, eligibility and financial aid, and conduct and
>   employment of coaching staff, including penalties for noncompliance.
>
> • Participation in activities listed cannot be compelled or mandated as
>   participation in NCAA sports can under signed agreement, and in
>   accordance with NCAA Bylaws, subject to loss of [activity] eligibility or
>   scholarship.
>
> • Several activities listed relate to academic pursuits.  For example, dramatics
>   can relate to drama degree programs; student publications to journalism
>   degree programs; glee clubs, bands and choirs to music degree programs;
>   radio stations to broadcasting and communications degree programs.
>
>   NCAA regulated sports are not similarly related to academic pursuits.

49.     Undersigned counsel further noted in response to the NCAA that points

distinguishing NCAA regulated sports, referenced in Paragraph 44, *supra*, also apply to the

referenced, "intramural and interscholastic athletics."  Simply put:

> Intramural athletics are not NCAA regulated sports.
>
> Neither are interscholastic athletics, which, in the context of activities listed [in
> DOL Field Operations Handbook, 10b03(e)], are student-run Club Sports.  *See,
> e.g.*, Bill Pennington, "Rise of College Club Teams Creates a Whole New Level
> of Success," N.Y. TIMES, Dec. 2, 2008.

www.StudentAthleteEquity.com

50.     Undersigned counsel concluded in response to the NCAA:

> In fact, DOL Field Operations Handbook, 10b24(b) bolsters my argument:
>
>> [A]n employment relationship will generally exist with regard to students whose duties are not part of an overall educational program ... for example, students who work at food service counters or **sell programs or usher at athletic events**, or who wait on tables or wash dishes in dormitories ...
>
> It's clear that students selling programs or ushering at athletic events are temporary employees due, at least, minimum-wage. Is the NCAA really going to contend that student athletes on the game field should not be treated similarly?

51.     The NCAA did not respond to undersigned counsel's critique of the NCAA's asserted grounds for refusing to recognize student athletes as temporary employees of NCAA Division I Member Schools under the FLSA, although undersigned counsel attempted to engage the NCAA in further discussion and indicated openness to consider a plausible defense.

52.     In good faith, undersigned counsel then approached the Commissioners of the NCAA Division I Conferences to which NCAA Division I Member Schools belong, made the same offer extended to the NCAA to engage in pre-litigation efforts to resolve claims and place student athletes on par with fellow students, who participate in work study programs, and indicated openness to consider a plausible defense. None of the Commissioners responded.

53.     Because Defendant NCAA, and Commissioners of the NCAA Division I Conferences to which NCAA Division I Member Schools belong, rejected good faith efforts by undersigned counsel to engage in pre-litigation efforts to resolve claims and place student athletes on par with fellow students, who participate in work study programs, this Complaint follows.

**Plaintiff Samantha Sackos**

54.     From academic year 2010-11 through academic year 2013-14, Sackos worked as an unpaid student athlete on the Women's Soccer roster of the University of Houston.

-22-

55.     In Women's Soccer season, Sackos worked approximately six days a week days per week for at least 20 hours per week pursuant to NCAA CARA limitations and recording requirements, but often as many as 30 hours per week.  In offseason, Sackos worked approximately five days per week for at least 8 hours per week pursuant to NCAA CARA limitations and recording requirements, but often as many as 15 hours per week.

56.     Sackos' work as a student athlete was closely supervised by University of Houston coaching staff, and members of the University of Houston Athletics Department, including personnel responsible for compliance with NCAA bylaws.

57.     Sackos received no academic credit for work as a student athlete, which work was non-academic in nature and unrelated to academic programs.

## CAUSE OF ACTION

### Fair Labor Standards Act | Minimum-Wage Provision

58.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 57, *supra*, as though fully set forth.

59.     The minimum-wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and supporting federal regulations and guidance, apply to Defendant NCAA Division I Member Schools and protect Plaintiff and the members of the Student Athlete Collective.

60.     Defendant NCAA Division I Member Schools have been, and continue to be, enterprises engaged in commerce within the meaning of 29 U.S.C. §§ 203(r) and (s), and to which the minimum-wage provisions of 29 U.S.C. § 206(a) apply.

61.     Plaintiff and members of the Student Athlete Collective have been, and continue to be, employees of their respective Defendant NCAA Division I Member Schools within the meaning of 29 U.S.C. § 203(e).

-23-

62.     Defendant NCAA Division I Member Schools have employed, and continue to employ, Plaintiff and members of the Student Athlete Collective participating in their respective athletics programs within the meaning of 29 U.S.C. § 203(g).

63.     Defendants have jointly agreed, and conspired, to engage in a widespread pattern, policy, and practice of misclassifying Plaintiff and members of the Student Athlete Collective as unpaid labor rather than temporary employees, prohibiting payment of lawfully-earned, modest wages to them as a function of Defendants' association bylaws, and failing to pay them for all hours Defendants suffered or permitted them to work.

64.     Defendants were aware, or should have been aware, that their conduct described herein was unlawful.  Defendants' unlawful conduct has been willful, and Defendants have made no good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the members of the Student Athlete Collective.

65.     Plaintiff and members of the Student Athlete Collective have suffered damages, and are entitled to recovery of such damages, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on her own behalf and on behalf of all others similarly situated, seeks the following relief:

A.     That, at the earliest possible time, Plaintiff be permitted to give notice of this action, or that the Court issues such notice, to members of the Student Athlete Collective set forth, informing them that this action has been filed, of the nature of this action, and of their right to join this action;

B.     Unpaid wages, and an additional equal amount as liquidated damages pursuant to the FLSA and supporting federal regulations and guidance;

C.     Pre-judgment interest and post-judgment interest;

www.StudentAthleteEquity.com

D.      An Order enjoining Defendants from continuing their unlawful policies and practices, described herein;

E.      Reasonable attorneys' fees and costs of the action; and

F.      Such other relief as the Court shall deem just and proper.

Respectfully submitted,

By: _____

Paul L. McDonald
P L McDonald Law LLC
1800 JFK Boulevard, Suite 300
Philadelphia, PA 19103
Tel:    (267) 238-3835
Fax:    (267) 238-3801
Email:  paul@plmcdonaldlaw.com

*Counsel for Plaintiff and the Proposed Collective*

Dated: October 20, 2014

www.StudentAthleteEquity.com

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all triable claims and issues.

Respectfully submitted,

By: _____

Paul L. McDonald
P L McDonald Law LLC
1800 JFK Boulevard, Suite 300
Philadelphia, PA 19103
Tel:     (267) 238-3835
Fax:     (267) 238-3801
Email: paul@plmcdonaldlaw.com

*Counsel for Plaintiff and the Proposed Collective*

Dated: October 20, 2014

www.StudentAthleteEquity.com