Paul L. McDonald (*pro hac vice*)
P L MCDONALD LAW LLC
1800 JFK Boulevard, Suite 300
Philadelphia, PA 19103
Telephone:    (267) 238-3835
Facsimile:    (267) 238-3801
Email:        paul@plmcdonaldlaw.com

Sanford P. Dumain (*pro hac vice* pending)
Jennifer J. Sosa (*pro hac vice* pending)
MILBERG LLP
One Pennsylvania Plaza, 49th Floor
New York, NY 10119
Telephone:    (212) 594-5300
Facsimile:    (212) 868-1229
Email:        sdumain@milberg.com
              jsosa@milberg.com

*Counsel for Plaintiffs and the Proposed Collective*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

GILLIAN BERGER, LAUREN ANDERSON,
and TAYLOR HENNIG, on their own behalf
and on behalf of similarly situated persons,

                Plaintiffs,

v.

NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION, a/k/a the NCAA, and the
following NCAA Division I Member Schools,
in their respective incorporated names or
in the name of their respective Boards of
Regents/Trustees, a/k/a:

ABILENE CHRISTIAN UNIVERSITY,
AMERICAN UNIVERSITY,
BAYLOR UNIVERSITY,
BELMONT UNIVERSITY,
BETHUNE-COOKMAN UNIVERSITY,
BOSTON COLLEGE;
BOSTON UNIVERSITY,
BRADLEY UNIVERSITY,

Civil Action No. 1:14-CV-1710 WTL-MJD

**AMENDED COMPLAINT AND
JURY DEMAND**

-1-

BRIGHAM YOUNG UNIVERSITY,
BROWN UNIVERSITY,
BRYANT UNIVERSITY,
BUCKNELL UNIVERSITY,
BUTLER UNIVERSITY,
CAMPBELL UNIVERSITY,
CANISIUS COLLEGE,
CHARLESTON SOUTHERN UNIVERSITY,
COLGATE UNIVERSITY,
COLUMBIA UNIVERSITY,
CORNELL UNIVERSITY,
CREIGHTON UNIVERSITY,
DARTMOUTH COLLEGE,
DAVIDSON COLLEGE,
UNIVERSITY OF DAYTON,
UNIVERSITY OF DENVER,
DEPAUL UNIVERSITY,
UNIVERSITY OF DETROIT MERCY,
DRAKE UNIVERSITY,
DREXEL UNIVERSITY,
DUKE UNIVERSITY,
DUQUESNE UNIVERSITY,
ELON UNIVERSITY,
UNIVERSITY OF EVANSVILLE,
FAIRFIELD UNIVERSITY,
FARLEIGH DICKINSON UNIVERSITY,
FORDHAM UNIVERSITY,
FURMAN UNIVERSITY,
GARDNER-WEBB UNIVERSITY,
GEORGE WASHINGTON UNIVERSITY,
GEORGETOWN UNIVERSITY,
GONZAGA UNIVERSITY,
GRAND CANYON UNIVERSITY,
HAMPTON UNIVERSITY,
UNIVERSITY OF HARTFORD,
HARVARD UNIVERSITY,
HIGH POINT UNIVERSITY,
HOFSTRA UNIVERSITY,
COLLEGE OF THE HOLY CROSS,
HOUSTON BAPTIST UNIVERSITY,
HOWARD UNIVERSITY,
UNIVERSITY OF THE INCARNATE WORD,
IONA COLLEGE,
JACKSONVILLE UNIVERSITY,
LA SALLE UNIVERSITY,
LAFAYETTE COLLEGE,
LEHIGH UNIVERSITY,
LIBERTY UNIVERSITY,

-2-

LIPSCOMB UNIVERSITY,
LONG ISLAND UNIVERSITY, BROOKLYN,
LOYOLA MARYMOUNT UNIVERSITY,
LOYOLA UNIVERSITY CHICAGO,
LOYOLA UNIVERSITY MARYLAND,
MANHATTAN COLLEGE,
MARIST COLLEGE,
MARQUETTE UNIVERSITY,
MERCER UNIVERSITY,
UNIVERSITY OF MIAMI,
MONMOUTH UNIVERSITY,
MOUNT ST. MARY'S UNIVERSITY,
NIAGARA UNIVERSITY,
NORTHEASTERN UNIVERSITY,
NORTHWESTERN UNIVERSITY,
UNIVERSITY OF NOTRE DAME,
ORAL ROBERTS UNIVERSITY,
UNIVERSITY OF THE PACIFIC,
UNIVERSITY OF PENNSYLVANIA,
PEPPERDINE UNIVERSITY,
UNIVERSITY OF PORTLAND,
PRESBYTERIAN COLLEGE,
PRINCETON UNIVERSITY,
PROVIDENCE COLLEGE,
QUINNIPIAC UNIVERSITY,
RICE UNIVERSITY,
UNIVERSITY OF RICHMOND,
RIDER UNIVERSITY,
ROBERT MORRIS UNIVERSITY,
SACRED HEART UNIVERSITY,
SAMFORD UNIVERSITY,
UNIVERSITY OF SAN DIEGO,
UNIVERSITY OF SAN FRANCISCO,
SANTA CLARA UNIVERSITY,
SEATTLE UNIVERSITY,
SETON HALL UNIVERSITY,
SIENA COLLEGE,
UNIVERSITY OF SOUTHERN CALIFORNIA,
SOUTHERN METHODIST UNIVERSITY,
ST. BONAVENTURE UNIVERSITY,
ST. FRANCIS COLLEGE BROOKLYN,
SAINT FRANCIS UNIVERSITY,
ST. JOHN'S UNIVERSITY,
SAINT JOSEPH'S UNIVERSITY,
SAINT LOUIS UNIVERSITY,
ST. MARY'S COLLEGE OF CALIFORNIA,
ST. PETER'S UNIVERSITY,
STANFORD UNIVERSITY,

STETSON UNIVERSITY,
SYRACUSE UNIVERSITY,
TEXAS CHRISTIAN UNIVERSITY,
TULANE UNIVERSITY,
UNIVERSITY OF TULSA,
VALPARAISO UNIVERSITY,
VANDERBILT UNIVERSITY,
VILLANOVA UNIVERSITY,
WAGNER COLLEGE,
WAKE FOREST UNIVERSITY,
WOFFORD COLLEGE,
XAVIER UNIVERSITY,
YALE UNIVERSITY,
UNIVERSITY OF DELAWARE,
UNIVERSITY OF NEW HAMPSHIRE,
NEW JERSEY INSTITUTE OF TECHNOLOGY,
PENNSYLVANIA STATE UNIVERSITY,
UNIVERSITY OF PITTSBURGH,
UNIVERSITY OF RHODE ISLAND,
RUTGERS, STATE UNIVERSITY OF
  NEW JERSEY, NEW BRUNSWICK
TEMPLE UNIVERSITY, and
UNIVERSITY OF VERMONT,

Defendants.

Plaintiffs, individually and on behalf of all others similarly situated, by undersigned counsel, for this Amended Complaint herein allege as follows:

**INTRODUCTION**

1.     Defendants in this action – National Collegiate Athletic Association ("NCAA") and NCAA Division I Member Schools not immune to federal lawsuit under the Eleventh Amendment – have jointly agreed, and conspired, among themselves and with NCAA Division I Member Conferences and the other NCAA Division I Member Schools, to violate the wage-and-hour provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), as described herein.

www.StudentAthleteEquity.com

2.      The crux of this Amended Complaint is the different, and better, treatment that NCAA Division I Member Schools afford student participants in work study part-time employment, as compared to treatment of student athletes pursuant to NCAA bylaws.

3.      Work study participants, who perform non-academic functions for no academic credit at the behest, and for the benefit, of NCAA Division I Member Schools, meet criteria for recognition as temporary employees under the FLSA.  Thus, NCAA Division I Member Schools must, and do, pay work study participants at least the federal minimum-wage of $7.25 an hour.

4.      For instance, "students who work at food service counters or sell programs or usher at athletic events, or who wait on tables or wash dishes in dormitories," are recognized, and paid, as temporary employees under the FLSA.[1]

5.      Similar to work study participants, student athlete performance outside the classroom, and on practice and playing fields, is non-academic, not related or otherwise relevant to any degree or academic program, and for no academic credit.

6.      But, by comparison to work study participants, student athletes are subject to stricter supervision by full-time staff of NCAA Division I Member Schools, hired expressly to supervise them, e.g., coaches and NCAA compliance personnel; confer as many, or more, tangible and intangible benefits on NCAA Division I Member Schools through NCAA athletics inextricably linked to school identity and spirit and used in promotional, commercial and fundraising appeals; and perform as many, and more rigorous, hours preparing for, and participating in, NCAA athletics.

7.      Student athletes meet criteria for recognition as temporary employees under the FLSA as much as, or more than, work study participants.  Thus, NCAA Division I Member Schools are required by law to pay student athletes at least the federal minimum-wage of $7.25 an hour.

---

[1]      U.S. Department of Labor, Wage and Hour Division, Field Operations Handbook § 10b24(b) (Oct. 20, 1993).

www.StudentAthleteEquity.com

8.     Defendants have jointly agreed, and conspired, to deprive student athletes of lawfully-earned, modest wages and of equal treatment under law.

9.     Defendants' refusal to recognize, and pay, student athletes as temporary employees under the FLSA, mandated by NCAA bylaws, produces this perverse result:  work study participants who sell programs or usher at athletic events are paid, on average, $9.03 an hour,[2] but student athletes whose performance creates those work study jobs at athletic events are paid nothing.

10.     Scholarships granted by NCAA Division I Member Schools to *some* student athletes, pursuant to NCAA bylaws, are not compensation for non-academic performance by student athletes because, among other things:

(i)     scholarships are grants-in-aid and generally not treated as taxable income – to a student athlete, or to any student granted any scholarship;

(ii)     scholarships are not offered, as a full or partial grant, to every student athlete engaged in non-academic performance;[3]

(iii)     scholarships are granted to defray the academic cost of attendance and facilitate maintenance of academic eligibility,[4] including, among other things, full-time enrollment,[5] and progress-toward degree requirements;[6]

(iv)     scholarship funds are not fungible, and cannot be granted for, or spent on, items other than the academic cost of attendance,[7] as is generally the case for any scholarship granted to any student;

---

[2]     In May 2013, the U.S. Department of Labor, Bureau of Labor Statistics reported in its National Industry-Specific Occupational Employment and Wage Estimates, NAICS 611300, that Ushers, Lobby Attendants, and Ticket Takers at Colleges, Universities, and Professional Schools are paid a Mean Hourly Wage of $9.03.

[3]     *See, e.g.,* NCAA Division I Bylaw 15.5.

[4]     *See, e.g.,* NCAA Division I Bylaws 15.2.1, 15.2.2, and 15.2.3.

[5]     NCAA Division I Bylaw 14.2.

[6]     NCAA Division I Bylaw 14.4.

[7]     *See, e.g.,* NCAA Division I Bylaw 15.1.

(v)     scholarships cannot be reduced or cancelled on the basis of athletics ability or performance, nor because of injury or physical condition;[8]

(vi)    scholarships can only be reduced or cancelled if the recipient becomes academically ineligible, engages in fraud or serious misconduct, or withdraws from the program to which the scholarship applies,[9] as is generally the case for any scholarship granted to any student; and

(vii)   any scholarship granted to any student, who also participates in work study, does not relieve the college employer from the obligation to pay at least the federal minimum-wage rate for non-academic performance in work study.

11.     In good faith, undersigned counsel approached the NCAA, and the Commissioners of the NCAA Division I Member Conferences to which NCAA Division I Member Schools belong, and offered to engage in pre-litigation efforts to resolve claims and place student athletes on par with fellow students, who participate in work study part-time employment.  The NCAA maintained that student athletes do not meet criteria for recognition, and pay, as temporary employees under the FLSA although students selling programs and ushering at games do.  None of the Commissioners of the NCAA Division I Member Conferences responded.  Thus, this Amended Complaint follows.

12.     Plaintiffs bring this action for unpaid wages on their own behalf and on behalf of all others similarly situated who elect to opt-in to this action pursuant to the collective action provision of the FLSA, 29 U.S.C. § 216(b), to remedy Defendants' violations of the wage and hour provisions of the FLSA that have deprived them of lawfully-earned, modest wages.

13.     Because Defendants' unlawful conduct has been willful, the appropriate statute of limitations is three years pursuant to 29 U.S.C. § 255(a).

---

[8]    NCAA Division I Bylaw 15.3.4.3.
[9]    NCAA Division I Bylaw 15.3.4.2.

14.     Because Defendants' unlawful conduct is mandated by NCAA bylaws, from which this actual, and recurring, controversy arises, Plaintiffs also seek a Declaration that NCAA bylaws aid and abet unlawful conduct complained of, and of the employment rights and legal relations of student athletes vis-à-vis Defendants.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and 29 U.S.C. § 216(b), in that this action arises under the FLSA.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391.  Each of the Defendants can be found, resides, has an agent, or transacts business in this District, and the unlawful conduct has been, or will be, carried on in part by one or more of the Defendants within this District.

17.     Defendant NCAA, an unincorporated association of more than 1,200 conferences and schools, regulates athletic competition and championships in 23 sports on behalf of NCAA Division I Member Schools from within this District.  NCAA headquarters and its principal place of business are located at 700 W. Washington Street, Indianapolis, IN 46206-6222.

18.     NCAA bylaws prohibit recognition of student athletes as temporary employees under the FLSA and the lawful payment of modest wages to student athletes, and NCAA Division I Member Schools are compelled to comply under the threat of competition and financial penalties issued by the NCAA from within this District.

19.     The annual NCAA convention, during which bylaws and bylaw enforcement programs are adopted by NCAA Division I Member Schools, has been held in this District, in Indianapolis, four times since 2000 (2000, 2002, 2006 and 2012) and is again to be held in Indianapolis in 2018.

20.     Annual member dues are paid to the NCAA, into this District, by NCAA Division I Member Schools.

21.     The NCAA has entered into multi-billion dollar agreements with CBS, ESPN, and Turner Sports to broadcast competitions between NCAA Division I Member Schools nationally, including within this District, and into multi-million dollar agreements with other corporate partners and sponsors, through which the NCAA receives funds that it distributes, from within this District, to NCAA Division I Member Schools in direct dollars, championships or services.

22.     The NCAA and NCAA Division I Member Conferences have conducted and are to conduct, and NCAA Division I Member Schools have participated and are to participate in, post-season and championship segments in this District, in Indianapolis, including: Division I Men's Basketball Final Four (2010 and 2015); Division I Women's Basketball Final Four (2016); Big Ten Football Championship (annually, since 2011); and Big Ten Men's Basketball Tournament (2002, 2004, 2006, 2008-2012, 2014, and 2016).

23.     Six NCAA Division I Member Schools are located in this District:  Ball State University; Butler University; University of Evansville; Indiana University, Bloomington; Indiana State University; and Indiana University – Purdue University at Indianapolis.  Other NCAA Division I Member Schools compete against those Member Schools located in the District in recruitment of student athletes residing in this District, and in games contested in this District.

24.     In addition to NCAA-related activities, NCAA Division I Member Schools engage in other commercial conduct in this District, including, but not limited to, application pitches to prospective students residing in this District, enrollment of applicants and receipt of tuition, room and board from this District, fundraising appeals to alumni residing in this District, and sales of licensed products in this District.

www.StudentAthleteEquity.com

## THE PARTIES

### Plaintiff Gillian Berger

25.    Plaintiff Gillian Berger ("Berger") is an adult individual who resides in Tarrytown, NY.

26.    Berger has been employed by the University of Pennsylvania ("Penn") as an unpaid student athlete on the Women's Track and Field roster from academic year 2012-13 through academic year 2014-15.

27.    Berger is a covered employee within the meaning of the FLSA.

28.    Berger has consented to join this action.  Her Consent to Join form is attached hereto at Exhibit A.

### Plaintiff Lauren Anderson

29.    Plaintiff Lauren Anderson ("Anderson") is an adult individual who resides in Westlake Village, CA.

30.    Anderson was employed by Penn as an unpaid student athlete on the Women's Track and Field roster from academic year 2011-12 through academic year 2013-14.

31.    Anderson is a covered employee within the meaning of the FLSA.

32.    Anderson has consented to join this action.  Her Consent to Join form is attached hereto at Exhibit A.

### Plaintiff Taylor Hennig

33.    Plaintiff Taylor Hennig ("Hennig") is an adult individual who resides in Garden City, NY.

34.    Hennig has been employed by Penn as an unpaid student athlete on the Women's Track and Field roster from academic year 2012-13 through academic year 2014-15.

35.    Hennig is a covered employee within the meaning of the FLSA.

36.    Hennig has consented to join this action.  Her Consent to Join form is attached hereto at Exhibit A.

www.StudentAthleteEquity.com

**Defendants**

37.    Plaintiffs incorporate by reference the allegations about Defendants contained in Paragraphs 17 through 24, *supra*, as though fully set forth.

38.    Defendant NCAA Division I Member Schools, which respective principal offices are identified in Exhibit B incorporated herein as though fully set forth, are covered employers within the meaning of the FLSA.

39.    At all relevant times, the NCAA and NCAA Division I Member Schools suffered or permitted, and benefitted from, the unpaid labor of Plaintiffs and/or members of the Student Athlete Collective, defined below, although NCAA Division I Member Schools and the NCAA could have adopted NCAA bylaws recognizing student athletes as temporary employees under the FLSA, and authorizing payment of lawfully-earned, modest wages.

## COLLECTIVE ACTION ALLEGATIONS

40.    Plaintiffs bring this action on their own behalf and on behalf of all student athletes representing Defendant NCAA Division I Member Schools in NCAA women's and men's sports at any time within the statute of limitations and through the date of the final judgment, or of the resolution of any appeal therefrom (the "Student Athlete Collective").

41.    NCAA bylaws prohibiting recognition of student athletes as temporary employees under the FLSA and the lawful payment of modest wages to student athletes, adopted through a legislative process by NCAA Division I Member Schools and enforceable against same under threat of competition and financial penalties issued by the NCAA, subject Plaintiffs and all members of the Student Athlete Collective to the same policies and practices, uniformly applied.

42.    NCAA bylaws are not only uniformly applied to deprive Plaintiffs and all members of the Student Athlete Collective of lawfully-earned, modest wages, but also to standardize conditions of their unpaid labor, including bylaws that limit the number of hours of supervision by coaches, i.e.,

countable athletically related activities ("CARA"), to 20 hours per week in playing and practice season and 8 hours per week in offseason, and require recording of CARA hours, similar to timesheets in work study employment.

43.     Because of Defendants' strict regulation by, and uniform application of, NCAA bylaws, Plaintiffs and all members of the Student Athlete Collective have suffered similar injuries and sustained similar damages.

44.     Defendants are liable under the FLSA for, *inter alia*, failing to properly classify and compensate Plaintiffs and members of the Student Athlete Collective.  The Student Athlete Collective consists of many similarly situated individuals who have not been paid by Defendants in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the lawsuit and the opportunity to join the lawsuit.  Those similarly situated collective members are known to Defendants, are readily identifiable, and can be located through Defendants' records.  Notice should be sent to members of the Student Athlete Collective pursuant to 29 U.S.C. § 216(b).

## FACTUAL ALLEGATIONS

**Student Athlete Collective**

45.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 44, *supra*, as though fully set forth.

46.     NCAA Division I Member Schools operate federal and non-federal work study programs (collectively, "work study") on their respective campuses.[10]  The broad purpose of work study is to promote part-time employment of students.[11]  Because work study participants are students first, NCAA Division I Member Schools limit the number of hours that a student is permitted to work

---

[10]    Federal work study is subsidized by federal funding and requires student participants to show financial need. Non-federal work study is not subsidized and does not require student participants to demonstrate financial need.

[11]    *See, e.g.*, 42 U.S.C. § 2751.

www.StudentAthleteEquity.com

in consideration of student health and academic progress, and students are not permitted to work during scheduled class times.  Timesheets showing student hours worked are maintained.[12]

47.    Student participants in work study part-time employment:

(i)    perform non-academic functions for no academic credit, including, but not limited to, clerical and technical support, food service, maintenance, sales and customer service in college offices and departments, libraries, dining halls, facilities and bookstores;

(ii)   are supervised by full-time college staff in the normal course of staff duties; and

(iii)  confer benefits on the college, and do not impede college operations.

For these reasons, work study participants meet criteria for recognition as temporary employees under the FLSA, and NCAA Division I Member Schools must, and do, pay work study participants at least the federal minimum-wage of $7.25 an hour.[13]

48.    In fact, as reported in May 2013 by the U.S. Department of Labor, Bureau of Labor Statistics in its National Industry-Specific Occupational Employment and Wage Estimates, NAICS 611300, work study participants, on average, are paid above the federal minimum-wage at Colleges, Universities, and Professional Schools.  For instance, the Mean Hourly Wages for common work study part-time employment positions include:

- $  9.03 for Ushers, Lobby Attendants, and Ticket Takers;
- $10.44 for Tour Guides and Escorts;
- $10.94 for Dishwashers;
- $11.25 for Counter Attendants, Cafeteria, Food Concession, and Coffee Shop;
- $11.71 for Cashiers;
- $12.19 for Retail Sales Workers;
- $12.77 for File Clerks;
- $14.11 for Building and Grounds Cleaning and Maintenance Occupations;

---

[12]    *See, e.g.,* U.S. Department of Education, 2014-2015 Federal Student Aid Handbook, 6-39, 6-42, 6-46.

[13]    *See, e.g.,* U.S. Department of Labor, Wage and Hour Division, Fact Sheet #71: Internship Programs Under The Fair Labor Standards Act (Apr. 2010).

- $14.21 for Receptionists and Information Clerks; and
- $14.56 for Library Assistants, Clerical.

49.     Similar to work study participants, student athlete performance outside the classroom, and on practice and playing fields, is non-academic, not related or otherwise relevant to any degree or academic program, and for no academic credit.

50.     Similar to the rationale for limitations on hours that a work study participant is permitted to work, NCAA Division I Constitution Article 2.14 states:

> The time required of student athletes for participation in intercollegiate athletics shall be regulated to minimize interference with their opportunities for acquiring a quality education in a manner consistent with that afforded the general student body.

To this end, NCAA bylaws restrict class time missed,[14] limit the number of hours of supervision by coaches, i.e., CARA, to 20 hours per week in playing and practice season and 8 hours per week in offseason,[15] and require recording of CARA hours similar to work study employment.[16]

51.     By comparison to work study participants, student athletes perform as many, and more rigorous, hours preparing for, and participating in, NCAA athletics.

52.     In fact, taking into account non-supervised hours not subject to FLSA regulation, NCAA Division I student athlete average total time commitment to NCAA athletics exceeds 20 hours per week of supervision by coaches in playing and practice season:  Football FBS (43.3 hours per week), Baseball (42.1 hours per week), Football FCS (41.6 hours per week), Men's Basketball (39.2 hours per week), Women's Basketball (37.6 hours per week), All Other Women's Sports (33.3 hours per week), and All Other Men's Sports (32.0 hours per week).[17]

---

[14]   NCAA Division I Bylaws 17.1.7.6.1 and 17.1.7.6.2.

[15]   NCAA Division I Bylaws 17.1.7.1 and 17.1.7.2.

[16]   NCAA Division I Bylaw 17.1.7.3.4.

[17]   NCAA *Growth, Opportunities, Aspirations and Learning of Students (GOALS) Study* (2010).

53.     By comparison to work study participants, student athletes are subject to stricter supervision by full-time staff of NCAA Division I Member Schools, hired expressly to supervise them, e.g., coaches and NCAA compliance personnel.  Such stricter supervision reflects, among other things, the comparably greater rigors of preparation for, and participation in, NCAA athletics and of compliance with the myriad of byzantine NCAA bylaws regulating student athlete eligibility.

54.     By comparison to work study participants, student athletes confer as many, or more, tangible and intangible benefits on NCAA Division I Member Schools.  For example, NCAA athletics are inextricably linked to school identity and spirit, and used in promotional, commercial and fundraising appeals to prospective and current students, alumni, boosters, donors and general supporters, in manners, and to degrees, unrivaled by work study programs.

55.     Student athletes meet criteria for recognition as temporary employees under the FLSA as much as, or more than, work study participants.  Thus, NCAA Division I Member Schools are required by law to pay student athletes at least the federal minimum-wage of $7.25 an hour.

56.     Defendants have jointly agreed, and conspired, to deprive student athletes of lawfully-earned, modest wages and of equal treatment under law.  NCAA bylaws, and the related bylaw enforcement program, are adopted through a legislative process by NCAA Member Schools. NCAA bylaws prohibit recognition of student athletes as temporary employees under the FLSA and lawful payment of modest wages to student athletes.[18]  Pursuant to the enforcement program, NCAA Division I Member Schools are compelled to comply under the threat of competition and financial penalties issued by the NCAA, including, but not limited to, the suspension or termination of student athlete eligibility, the suspension of coaching staff, and/or team disqualification from regular season competition and/or post-season and championship segments.[19]

---

[18]   *See, e.g.,* NCAA Division I Bylaws 12.1.2(a) and 12.1.2.1.1.
[19]   NCAA Division I Bylaws 19.9.5, 19.9.7 and 19.9.8.

57.     Defendants' refusal to recognize, and pay, student athletes as temporary employees under the FLSA is not only unlawful, but also arbitrary in that Defendants only prohibit such employee recognition, and pay, during playing and practice seasons.  By contrast, during the summer, NCAA bylaws permit NCAA Division I Member Schools to employ a select few student athletes as temporary employees under the FLSA in less-demanding roles as counselors for sports camps and clinics,[20] and to pay them, on average, $12.11 an hour.[21]

58.     The facts that Defendants permit NCAA Division I Member Schools to employ, and pay, a select few student athletes as temporary employees under the FLSA in less-demanding roles as counselors for sports camps and clinics, and that NCAA Division I Member Schools operate work study programs that require timesheets much as NCAA bylaws require recording of CARA hours, demonstrate that Defendants understand FLSA requirements and could easily comply with such requirements with respect to recognition, and payment, of student athletes as temporary employees during playing and practice seasons.  But, Defendants have willfully refused to comply with the law.

59.     In good faith, undersigned counsel approached the NCAA and offered to engage in pre-litigation efforts to resolve claims and place student athletes on par with fellow students, who participate in work study part-time employment.

60.     In spite of all the evidence to the contrary, described herein, the NCAA maintained that student athletes do not meet criteria for recognition, and pay, as temporary employees under the FLSA as work study participants do.

---

[20]     NCAA Division I Bylaw 12.4.3.

[21]     In May 2013, the U.S. Department of Labor, Bureau of Labor Statistics reported in its National Industry-Specific Occupational Employment and Wage Estimates, NAICS 611300, that Recreation and Fitness Workers at Colleges, Universities, and Professional Schools are paid a Mean Hourly Wage of $12.11 an hour.

Recreation and Fitness Workers, among other things, "coach groups or individuals in exercise activities [and] [d]emonstrate techniques and form, observe participants, and explain to them corrective measures necessary to improve their skills."

61. The NCAA asserted that NCAA regulated sports are extracurricular activities in the same manner as, "dramatics, student publications, glee clubs, bands, choirs, debating teams, radio stations, intramural and interscholastic athletics … conducted primarily for the benefit of the participants as part of [] educational opportunities, " and, thus exempt from FLSA requirements.[22]

62. Undersigned counsel responded to the NCAA, "[o]n its face, it's not credible to assert that NCAA regulated sports are akin to, 'dramatics, student publications, glee clubs, bands, choirs, debating teams, radio stations.'"

63. Undersigned counsel elaborated in response to the NCAA:

> [A]s to DOL Field Operations Handbook, 10b03(e), NCAA regulated sports are distinguishable from activities listed.
>
> - Each of the activities listed are organized as student groups, and run by students.
>
> - Full-time university employees are not hired, and paid salaries, for the sole purpose of supervising the activities listed.  If there is faculty involvement (and there often is not), the faculty role is advisory rather than supervisory, is not part of regular duties, and can impede performance of regular duties.
>
> NCAA regulated sports are supervised by full-time coaching staffs and athletics department personnel as part of their regular duties.
>
> - None of the activities listed is as regulated as NCAA sports.  There is no student group analog to NCAA Division Manuals setting forth a myriad of rules for participant recruitment, eligibility and financial aid, and conduct and employment of coaching staff, including penalties for noncompliance.
>
> - Participation in activities listed cannot be compelled or mandated as participation in NCAA sports can under signed agreement, and in accordance with NCAA Bylaws, subject to loss of [activity] eligibility or scholarship.
>
> - Several activities listed relate to academic pursuits.  For example, dramatics can relate to drama degree programs; student publications to journalism degree programs; glee clubs, bands and choirs to music degree programs; radio stations to broadcasting and communications degree programs.
>
> NCAA regulated sports are not similarly related to academic pursuits.

---

[22]   U.S. Department of Labor, Wage and Hour Division, Field Operations Handbook § 10b03(e) (Oct. 20, 1993).

64. Undersigned counsel further noted in response to the NCAA that points distinguishing NCAA regulated sports, referenced in Paragraph 63, *supra*, also apply to the referenced, "intramural and interscholastic athletics." Simply put:

> Intramural athletics are not NCAA regulated sports.
>
> Neither are interscholastic athletics, which, in the context of activities listed [in DOL Field Operations Handbook, 10b03(e)], are student-run Club Sports. *See, e.g.*, Bill Pennington, "Rise of College Club Teams Creates a Whole New Level of Success," N.Y. TIMES, Dec. 2, 2008.

65. Undersigned counsel concluded in response to the NCAA:

> In fact, DOL Field Operations Handbook, 10b24(b) bolsters my argument:
>
> > [A]n employment relationship will generally exist with regard to students whose duties are not part of an overall educational program … for example, students who work at food service counters or **sell programs or usher at athletic events**, or who wait on tables or wash dishes in dormitories …
>
> It's clear that students selling programs or ushering at athletic events are temporary employees due, at least, minimum-wage. Is the NCAA really going to contend that student athletes on the game field should not be treated similarly?

66. The NCAA did not respond to undersigned counsel's critique of the NCAA's grounds for refusing to recognize student athletes as temporary employees under the FLSA, although undersigned counsel attempted to engage the NCAA in further discussion and indicated openness to consider a plausible defense.

67. In good faith, undersigned counsel then approached the Commissioners of the NCAA Division I Member Conferences to which NCAA Division I Member Schools belong, made the same offer extended to the NCAA to engage in pre-litigation efforts to resolve claims and place student athletes on par with fellow students, who participate in work study part-time employment, and indicated openness to consider a plausible defense. None of the Commissioners responded.

www.StudentAthleteEquity.com

**Plaintiff Gillian Berger**

68.    From academic year 2012-13 through academic year 2014-15, Berger has worked as an unpaid student athlete on the Penn Women's Track and Field roster.

69.    During Women's Track and Field seasons, Berger worked 20 hours per week supervised by Penn coaches, pursuant to NCAA CARA bylaws.  In the offseason, she worked 8 hours per week supervised by Penn coaches, pursuant to NCAA CARA bylaws.

70.    Berger's work as a student athlete was closely supervised by Penn coaching staff, and members of the Penn Athletics Department, including personnel responsible for compliance with NCAA bylaws strictly regulating the terms and conditions of her athletic participation.

71.    Berger received no academic credit for work as a student athlete, which work was non-academic and not related or otherwise relevant to any degree or academic program.

**Plaintiff Lauren Anderson**

72.    From academic year 2011-12 through academic year 2013-14, Anderson worked as an unpaid student athlete on the Penn Women's Track and Field roster.

73.    During Women's Track and Field seasons, Anderson worked 20 hours per week supervised by Penn coaches, pursuant to NCAA CARA bylaws.  In the offseason, she worked 8 hours per week supervised by Penn coaches, pursuant to NCAA CARA bylaws.

74.    Anderson's work as a student athlete was closely supervised by Penn coaching staff, and members of the Penn Athletics Department, including personnel responsible for compliance with NCAA bylaws strictly regulating the terms and conditions of her athletic participation.

75.    Anderson received no academic credit for work as a student athlete, which work was non-academic and not related or otherwise relevant to any degree or academic program.

www.StudentAthleteEquity.com

**Plaintiff Taylor Hennig**

76.     From academic year 2012-13 through academic year 2013-14, Hennig has worked as an unpaid student athlete on the Penn Women's Track and Field roster.

77.     During Women's Track and Field seasons, Hennig worked 20 hours per week supervised by Penn coaches, pursuant to NCAA CARA bylaws.  In the offseason, she worked 8 hours per week supervised by Penn coaches, pursuant to NCAA CARA bylaws.

78.     Hennig's work as a student athlete was closely supervised by Penn coaching staff, and members of the Penn Athletics Department, including personnel responsible for compliance with NCAA bylaws strictly regulating the terms and conditions of her athletic participation.

79.     Hennig received no academic credit for work as a student athlete, which work was non-academic and not related or otherwise relevant to any degree or academic program.

## CAUSE OF ACTION

### Fair Labor Standards Act | Minimum-Wage Provision

80.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 79, *supra*, as though fully set forth.

81.     The minimum-wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and supporting federal regulations and guidance, apply to Defendant NCAA Division I Member Schools and protect Plaintiffs and the members of the Student Athlete Collective.

82.     Defendant NCAA Division I Member Schools have been, and continue to be, enterprises engaged in commerce within the meaning of 29 U.S.C. §§ 203(r) and (s), and to which the minimum-wage provisions of 29 U.S.C. § 206(a) apply.

83.     Plaintiffs and members of the Student Athlete Collective have been, and continue to be, employees of their respective Defendant NCAA Division I Member Schools within the meaning of 29 U.S.C. § 203(e).

84.     Defendant NCAA Division I Member Schools have employed, and continue to employ, Plaintiffs and members of the Student Athlete Collective participating in their respective NCAA athletics programs within the meaning of 29 U.S.C. § 203(g).

85.     Defendants have jointly agreed, and conspired, to engage in a widespread pattern, policy, and practice of misclassifying Plaintiffs and members of the Student Athlete Collective as unpaid labor rather than temporary employees, prohibiting payment of lawfully-earned, modest wages to them as a function of Defendants' association bylaws, and failing to pay them for all hours Defendants suffered or permitted them to work.

86.     Defendants were aware, or should have been aware, that their conduct described herein was unlawful.  Defendants' unlawful conduct has been willful, and Defendants have made no good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the members of the Student Athlete Collective.

87.     Plaintiffs and members of the Student Athlete Collective have suffered damages, and are entitled to recovery of such damages, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of all others similarly situated, seek the following relief:

A.     That, at the earliest possible time, Plaintiffs be permitted to give notice of this action, or that the Court issues such notice, to members of the Student Athlete Collective set forth, informing them that this action has been filed, of the nature of this action, and of their right to join this action;

B.     Unpaid wages, and an additional equal amount as liquidated damages pursuant to the FLSA and supporting federal regulations and guidance;

C.     Pre-judgment interest and post-judgment interest;

D.      Reasonable attorneys' fees and costs of the action;

E.      A Declaration that NCAA bylaws aid and abet unlawful conduct complained of, and of the employment rights and legal relations of student athletes vis-à-vis Defendants; and

F.      Such other relief as the Court shall deem just and proper.

Respectfully submitted,


By: s/Paul L. McDonald

Paul L. McDonald (*pro hac vice*)
P L MCDONALD LAW LLC
1800 JFK Boulevard, Suite 300
Philadelphia, PA 19103
Telephone:   (267) 238-3835
Facsimile:    (267) 238-3801
Email:         paul@plmcdonaldlaw.com

Sanford P. Dumain (*pro hac vice* pending)
Jennifer J. Sosa (*pro hac vice* pending)
MILBERG LLP
One Pennsylvania Plaza, 49th Floor
New York, NY 10119
Telephone:   (212) 594-5300
Facsimile:    (212) 868-1229
Email:         sdumain@milberg.com
                jsosa@milberg.com

*Counsel for Plaintiffs and the Proposed Collective*


Dated:  March 18, 2015

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all triable claims and issues.

Respectfully submitted,

By: s/Paul L. McDonald

Paul L. McDonald (*pro hac vice*)
P L MCDONALD LAW LLC
1800 JFK Boulevard, Suite 300
Philadelphia, PA 19103
Telephone:   (267) 238-3835
Facsimile:    (267) 238-3801
Email:         paul@plmcdonaldlaw.com

Sanford P. Dumain (*pro hac vice* pending)
Jennifer J. Sosa (*pro hac vice* pending)
MILBERG LLP
One Pennsylvania Plaza, 49th Floor
New York, NY 10119
Telephone:   (212) 594-5300
Facsimile:    (212) 868-1229
Email:         sdumain@milberg.com
               jsosa@milberg.com

*Counsel for Plaintiffs and the Proposed Collective*

Dated:  March 18, 2015

www.StudentAthleteEquity.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 18, 2015, I served the foregoing document on counsel by

filing via the District Court CM/ECF system, which will send an email notice to all registered parties.

By: s/Paul L. McDonald

Paul L. McDonald (*pro hac vice*)
P L MCDONALD LAW LLC

*Counsel for Plaintiffs and the Proposed Collective*

www.StudentAthleteEquity.com