# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

January 12, 2017

To:
Laura A. Briggs
UNITED STATES DISTRICT COURT
Southern District of Indiana
United States Courthouse
Indianapolis , IN 46204-0000

| No. 16-1558 | GILLIAN BERGER, et. al., Plaintiffs - Appellants<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, and NCAA Division I Member Schools, also known as NCAA, et. al., Defendants - Appellees |
|---|---|
| **Originating Case Information:** | |
| District Court No: 1:14-cv-01710-WTL-MJD<br>Southern District of Indiana, Indianapolis Division<br>District Judge William T. Lawrence | |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:     No record to be returned

**NOTE TO COUNSEL:**

If any physical and large documentary exhibits have been filed in the above-entitled cause, they are to be withdrawn ten (10) days from the date of this notice. Exhibits not withdrawn during this period will be disposed of.

Please acknowledge receipt of these documents on the enclosed copy of this notice.

------------------------------------

Received above mandate and record, if any, from the Clerk, U.S. Court of Appeals for the Seventh Circuit.

**Date:**                                              **Received by:**

_____1/12/2017_____

_____*Maggie Trigg*_____
Deputy Clerk, U.S. District Court

form name: **c7_Mandate**(form ID: **135**)

## UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**FINAL JUDGMENT**

December 5, 2016

Before:
MICHAEL S. KANNE, Circuit Judge
DIANE S. SYKES, Circuit Judge
DAVID F. HAMILTON, Circuit Judge

| No. 16-1558 | GILLIAN BERGER, et. al., Plaintiffs - Appellants<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, and NCAA Division I Member Schools, also known as NCAA, et. al., Defendants - Appellees |
|---|---|
| **Originating Case Information:** ||
| District Court No: 1:14-cv-01710-WTL-MJD<br>Southern District of Indiana, Indianapolis Division<br>District Judge William T. Lawrence ||

The judgment of the District Court is **AFFIRMED**, with costs, in accordance with the decision of this court entered on this date.

form name: **c7_FinalJudgment**(form ID: **132**)

CERTIFIED COPY
A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 16-1558

GILLIAN BERGER, et al.,

                                              *Plaintiffs-Appellants*,

*v.*

NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, et al.,

                                              *Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 14-cv-1710 — **William T. Lawrence**, *Judge*.

_____

ARGUED SEPTEMBER 28, 2016 — DECIDED DECEMBER 5, 2016

_____

Before KANNE, SYKES, and HAMILTON, *Circuit Judges*.

KANNE, *Circuit Judge*. Former student athletes at the University of Pennsylvania ("Penn") sued Penn, the National Collegiate Athletic Association ("NCAA"), and more than 120 other NCAA Division I universities and colleges alleging that student athletes are employees who are entitled to a minimum wage under the Fair Labor Standards Act ("FLSA"). The district court disagreed. We agree with the

district court and hold that student athletes are not employees and are not covered by the FLSA.

## I. Background

Gillian Berger and Taylor Hennig ("Appellants") are former students at Penn who participated on Penn's women's track and field team. Like many collegiate athletic teams across the country, Penn's women's track and field team is regulated by the NCAA. The NCAA is a member-driven, unincorporated association of 1121 colleges and universities. It is divided into three divisions—Divisions I, II, and III—based roughly on the size of the schools and their athletic programs. Penn's women's track and field team competes in Division I, which includes the largest colleges and universities in the country.

Appellants sued Penn, the NCAA, and more than 120 other NCAA Division I member schools ("Appellees"), alleging that student athletes are "employees" within the meaning of the FLSA, 29 U.S.C. § 201. Accordingly, Appellants contend that the NCAA and its member schools violated the FLSA by not paying their athletes a minimum wage. Appellees moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

The district court granted Appellees' motions, holding that (1) Appellants lacked standing to sue any of the Appellees other than Penn, and (2) Appellants failed to state a claim against Penn because student athletes are not employees under the FLSA. This appeal followed.

## II. Analysis

The district court first dismissed Appellants' suit against all of the Appellees except Penn for lack of standing. We re-

Case 1:14-cv-01710-WTL-MJD   Document 251   Filed 01/12/17   Page 6 of 17 PageID #: 3035
Case: 16-1558   Document: 00712917434   Filed: 01/12/2017   Pages: 13   (3 of 17)

No. 16-1558                                                                 3

view *de novo* a district court's dismissal of a complaint for lack of standing. *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016).

In every case, the plaintiff has the burden of establishing the three elements of standing: that "(1) [he or she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). To meet this burden and to survive a challenge to standing under Rule 12(b)(1), a plaintiff must plead sufficient factual allegations, taken as true, that "plausibly suggest" each of these elements. *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015).

Under the FLSA, alleged employees' "injuries are only traceable to, and redressable by, those who employed them." *Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 412 (D. Md. 2013). Appellants attended Penn. Their connection to the other schools and the NCAA is far too tenuous to be considered an employment relationship: "the only fair reading of the Amended Complaint is that [Appellants] are alleging that they are employees of only Penn, not of the other Defendants." (R. 238 at 5.) Thus, Appellants have not plausibly alleged any injury traceable to, or redressable by, any defendant other than Penn. So they lack standing to sue those other defendants.

We now turn to the merits with regard to Penn, over which no one disputes that we have jurisdiction. The district

court dismissed Appellants' suit against Penn for failure to state a claim. We review *de novo* a district court's dismissal of a complaint for failure to state a claim. *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 862 (7th Cir. 2016). In evaluating the sufficiency of the complaint, "we construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the nonmoving party's] favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010)). Although a party need not plead "detailed factual allegations" to survive a motion to dismiss, mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

The FLSA requires "[e]very employer" to pay "his employees" a minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(c). Section 203(e)(1) defines "employee" in an unhelpful and circular fashion as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). Section 203(g) broadly defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g). Thus, to qualify as an employee for purposes of the FLSA, one must perform "work" for an "employer."[1] "Work" is not defined by the Act.

---

[1] Section 203(d) of the FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee … ." 29 U.S.C. § 203(d).

Under the FLSA, the plaintiff bears the burden of establishing that he or she performed work for an employer and is therefore entitled to compensation. *Melton v. Tippecanoe Cty.*, 838 F.3d 814, 818 (7th Cir. 2016). Here, to survive the motions to dismiss, Appellants had to allege facts, which taken as true, establish that they were employees and performed work for Penn.

Although "[t]he Supreme Court has instructed the courts to construe the terms 'employee' and 'employer' expansively under the FLSA," *Vanskike v. Peters*, 974 F.2d 806, 807 (7th Cir. 1992) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)), the Court has also held that the definition of "employee" "does have its limits." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 (1985). "Because status as an 'employee' for purposes of the FLSA depends on the totality of circumstances rather than on any technical label, courts must examine the 'economic reality' of the working relationship" between the alleged employee and the alleged employer to decide whether Congress intended the FLSA to apply to that particular relationship. *Vanskike*, 974 F.2d at 808.

To guide this inquiry, courts have developed a variety of multifactor tests. For example, we have applied a seven-factor test to determine whether migrant laborers are employees for purposes of the FLSA. *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1535–538 (7th Cir. 1987). Similarly, the Second Circuit created a "non-exhaustive set of [seven] considerations" to help determine when an intern is an employee under the FLSA. *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 536–37 (2d Cir. 2015). Appellants liken student athletes to interns and contend that we should use the Second Cir-

Case: 1:14-cv-01710-WTL-MJD   Document 251   Filed 01/12/17   Page 9 of 17 PageID #: 3038
Case: 16-1558   Document: 00712917434   Filed: 01/12/2017   Pages: 13   (6 of 17)

6                                                                  No. 16-1558

cuit's test set forth in *Glatt* to determine whether student athletes are employees under the FLSA. We disagree.

It is true, as Appellants note, that the district court cited the Second Circuit's test favorably. But the district court also declined to follow that test here. Instead, the court concluded correctly that our approach "to determining who is an employee under the FLSA is … a flexible one." (R. 238 at 15.) The court then discussed our decision in *Vanskike*, in which we rejected the strict application of a similar multifactor test in favor of a more flexible standard. 974 F.2d at 809.[2]

We have declined to apply multifactor tests in the employment setting when they "fail to capture the true nature of the relationship" between the alleged employee and the alleged employer. *Id.* In *Vanskike*, we considered whether an inmate at a state prison was an employee under the FLSA. *Id.* at 806. Like Appellants here, the inmate in *Vanskike* urged us to apply a multifactor test to determine whether an employment relationship existed. We rejected the application of that test because it was "not the most helpful guide in the situation presented." *Id.* at 809. Rather than follow a specific test, we examined the economic reality of the alleged employment relationship and concluded that the prisoner was not an employee. *Id.* at 809–10.[3]

---

[2] The multifactor test rejected in *Vanskike* comes from *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983).

[3] Similarly, in *Callahan v. City of Chicago*, we rejected the application of *Lauritzen's* multifactor test when the alleged employee's suit didn't "require a choice between employment and independent-contractor status." 813 F.3d 658, 662 (7th Cir. 2016). Other courts have likewise rejected the stringent application of multifactor tests in certain settings. *See e.g.*,
(continued…)

No. 16-1558 7

The district court followed the reasoning of *Vanskike* and held that the "factors used in the trainee and private-sector intern context fail to capture the nature of the relationship between the Plaintiffs, as student athletes, and Penn." (R. 238 at 15). We agree with the district court and decline to apply the test set forth in *Glatt* here.

As the Supreme Court has noted, there exists "a revered tradition of amateurism in college sports." *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 120 (1984). That long-standing tradition defines the economic reality of the relationship between student athletes and their schools. To maintain this tradition of amateurism, the NCAA and its member universities and colleges have created an elaborate system of eligibility rules. *See O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049, 1054–55 (9th Cir. 2015) (outlining the development of these rules). We have held that these rules "define what it means to be an amateur or a student-athlete, and are therefore essential to the very existence of" collegiate athletics. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 343 (7th Cir. 2012). The multifactor test proposed by Appellants here simply does not take into account this tradition of amateurism or the reality of the student-athlete experience. In short, it "fail[s] to capture the true nature of the relationship" between student athletes and

---

(…continued)
*Danneskjold v. Hausrath*, 82 F.3d 37 (2d Cir. 1996); *Doyle v. City of New York*, 91 F. Supp. 3d 480, 486 (S.D.N.Y. 2015) ("[I]n certain contexts, application of a multifactor test can cause a court to miss the forest for the trees.").

8                                                                  No. 16-1558

their schools and is not a "helpful guide." *Vanskike*, 974 F.2d at 809.

A majority of courts have concluded—albeit in different contexts—that student athletes are not employees. *See generally* Adam Epstein and Paul M. Anderson, *The Relationship Between a Collegiate Student-Athlete and the University: An Historical and Legal Perspective*, 26 Marq. Sports L. Rev. 287, 297 (2016) (collecting cases and concluding that "the courts have been consistent finding that student athletes are not recognized as employees under any legal standard, whether bringing claims under workers' compensation laws, the NLRA or FLSA"). For example, most courts have held that student athletes are not employees in the workers' compensation context and are thus not entitled to compensation from their schools for injuries they suffer while playing their respective sports. *See e.g.*, *Rensing v. Ind. State Univ. Bd. of Trustees*, 444 N.E.2d 1170 (Ind. 1983); *State Comp. Ins. Fund v. Indus. Comm'n*, 314 P.2d 288 (Colo. 1957); *Waldrep v. Tex. Emp'rs Ins. Ass'n*, 21 S.W.3d 692 (Tex. App. 2000); *Coleman v. W. Mich. Univ.*, 336 N.W.2d 224 (Mich. Ct. App. 1983).

Although two courts reached the opposite conclusion over fifty years ago, they did so, at least in part, because the student athletes in those cases were also separately employed by their universities. *See Univ. of Denver v. Nemeth*, 257 P.2d 423 (Colo. 1953); *Van Horn v. Indus. Accident Comm'n*, 33 Cal. Rptr. 169 (Cal. Dist. Ct. App. 1963). Moreover, in 1965, the California legislature, in apparent disagreement with the California District Court of Appeal in *Van Horn*, amended the state's labor code to explicitly exclude student-athletic participants as employees for purposes of worker's compensation. *See Shephard v. Loyola Marymount*

No. 16-1558                                                                 9

*Univ.*, 125 Cal. Rptr. 2d 829, 832–34 (Cal. Ct. App. 2002) (discussing the legislature's amendment).

The Department of Labor, through its Field Operations Handbook ("FOH"), has also indicated that student athletes are not employees under the FLSA. The FOH "is an operations manual that provides Wage and Hour Division … investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance." *Field Operations Handbook (FOH)*, United States Dep't of Labor, https://www.dol.gov/Whd/FOH/index.htm. Appellants argue that the FOH "cannot form the basis for *any* dismissal." (Appellants' Reply Br. at 11.) We agree with Appellants that the provisions in this handbook are not dispositive, but they certainly are persuasive. In fact, we have cited this handbook as persuasive authority several times. *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014); *Yi v. Sterling Collision Ctrs, Inc.*, 480 F.3d 505, 508 (7th Cir. 2007).

Chapter ten of the FOH "contains interpretations regarding the employment relationship required for the [FLSA] to apply." *Field Operations Handbook (FOH)*, § 10a00. Section 10b24 specifically addresses the employment status of university or college students. This section is broken into two subsections—subsection (a) and subsection (b).

Subsection (a) discusses situations when university or college students are not treated as employees under the FLSA. Under this subsection, "University or college students who participate in activities generally recognized as *extracurricular* are generally not considered to be employees within the meaning of the [FLSA]." § 10b24(a) (emphasis added).

This subsection then cross-references another section, § 10b03(e), which states the following:

> As part of their overall educational program, public or private schools … may permit or require students to engage in activities in connection with dramatics, student publications, glee clubs, bands, choirs, debating teams, radio stations, intramural and *interscholastic athletics* and other similar endeavors. Activities of students in such programs, conducted primarily for the benefit of the participants as a part of the educational opportunities provided to the students by the school or institution, are not work of the kind contemplated by [the FLSA] and do not result in an employer-employee relationship between the student and the school … ."

(emphasis added).

Subsection (b), "[o]n the other hand" discusses situations in which "an employment relationship will generally exist with regard to students … ." § 10b24(b). Under this subsection, students who participate in a work-study program and, for example, "work at food service counters or sell programs or usher at athletic events, or who wait on tables or wash dishes in dormitories in anticipation of some compensation" are "generally considered employees under the [FLSA]." *Id.*

Appellants compare NCAA-regulated athletes to the work-study participants of § 10b24(b) and argue that these athletes should be deemed employees under the FLSA. In so doing, Appellants contend that § 10b24(a)'s reference to "extracurricular" activities and § 10b03(e)'s reference to "inter-

Case 1:14-cv-01710-WTL-MJD   Document 251   Filed 01/12/17   Page 14 of 17 PageID #: 3043
Case: 16-1558   Document: 00712917434   Filed: 01/12/2017   Pages: 13   (11 of 17)

No. 16-1558                                                        11

scholastic athletics" refer only to "student-run, interscholastic club sports," and not to NCAA-regulated sports. (Appellants' Br. at 18). To support this argument, Appellants point to the many differences between club sports and NCAA-regulated sports—the most obvious of which being that club sports are largely student-run, whereas NCAA-regulated sports are heavily supervised by university-employed staff. We agree that NCAA-regulated sports are very different from club sports, but we disagree that this warrants different treatment under the clear language of the FOH.

Section 10b24(a) categorically states that students who participate in "extracurricular" activities are generally not considered employees. Section 10b03(e) includes "interscholastic athletics" in a list of activities that do not constitute "work." These references are not limited to activities that are entirely student run. In fact, most of the activities included in § 10b03(e)'s list are not student run. Appellants have not presented any persuasive argument to suggest that the Department of Labor intended to limit this language to student-run activities. We therefore reject Appellants' linguistic limitation.

Because NCAA-regulated sports are "extracurricular," "interscholastic athletic" activities, we do not believe that the Department of Labor intended the FLSA to apply to student athletes. We find the FOH's interpretation of the student-athlete experience to be persuasive.

Appellants in this case have not, and quite frankly cannot, allege that the activities they pursued as student athletes qualify as "work" sufficient to trigger the minimum wage requirements of the FLSA. Student participation in collegiate athletics is entirely voluntary. Moreover, the long tradition

Case 1:14-cv-01710-WTL-MJD Document 251 Filed 01/12/17 Page 15 of 17 PageID #: 3044
Case: 16-1558 Document: 00712917434 Filed: 01/12/2017 Pages: 13 (12 of 17)

12 No. 16-1558

of amateurism in college sports, by definition, shows that student athletes—like all amateur athletes—participate in their sports for reasons wholly unrelated to immediate compensation. Although we do not doubt that student athletes spend a tremendous amount of time playing for their respective schools, they do so—and have done so for over a hundred years under the NCAA—without any real expectation of earning an income. Simply put, student-athletic "play" is not "work," at least as the term is used in the FLSA. We therefore hold, as a matter of law, that student athletes are not employees and are not entitled to a minimum wage under the FLSA.

We briefly conclude by addressing Appellants' argument that employment status is an inherently fact-intensive inquiry and thus should not be decided at the motion-to-dismiss stage. We reject this argument. Because we conclude, as a matter of law, that student athletes are not employees under the FLSA, no discovery or further development of the record could help Appellants. Appellants did not and could not allege facts, even taken as true, that give rise to a cause of action. *See Vanskike*, 974 F.2d at 813 (affirming the district court's grant of a motion to dismiss because plaintiffs had failed to establish the existence of an employment relationship).

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of Appellees' motions to dismiss.

No. 16-1558 13

HAMILTON, *Circuit Judge*, concurring. I join Judge Kanne's opinion for the court but wish to add a note of caution. The plaintiffs in this case were students who participated in track and field at the University of Pennsylvania. Like other Ivy League schools, Penn does not offer athletic scholarships. Also, as far as I know, track and field is not a "revenue" sport at Penn or any other school. In this case, therefore, the economic reality and the sometimes frayed tradition of amateurism both point toward dismissal of these plaintiffs' claims. See generally, e.g., *O'Bannon v. National Collegiate Athletic Ass'n*, 802 F.3d 1049, 1054–55 (9th Cir. 2016) (holding that NCAA compensation rules for Division I men's basketball players and Football Bowl Subdivision football players violated federal antitrust laws).

Because the plaintiffs in this case did not receive athletic scholarships and participated in a non-revenue sport, they pursued a broad theory. The logic of their claim would have included not only any college athlete in any sport and any NCAA division, but also college musicians, actors, journalists, and debaters. That broad theory is mistaken, as Judge Kanne's opinion explains. I am less confident, however, that our reasoning should extend to students who receive athletic scholarships to participate in so-called revenue sports like Division I men's basketball and FBS football. In those sports, economic reality and the tradition of amateurism may not point in the same direction. Those sports involve billions of dollars of revenue for colleges and universities. Athletic scholarships are limited to the cost of attending school. With economic reality as our guide, as I believe it should be, there may be room for further debate, perhaps with a developed factual record rather than bare pleadings, for cases addressing employment status for a variety of purposes.



CERTIFIED COPY
A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

January 4, 2017

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

CERTIFIED COPY
A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

| | |
|---|---|
| No. 16-1558 | |
| GILLIAN BERGER, et al., *Plaintiffs-Appellants*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| v. | No. 14-cv-1710 |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, et al., *Defendants-Appellees*. | William T. Lawrence, *Judge*. |

**ORDER**

On consideration of the petition for rehearing and rehearing en banc, no judge in active service has requested a vote on the petition for rehearing en banc[*] and the judges on the panel have voted to deny rehearing. It is, therefore, **ORDERED** that rehearing and rehearing en banc are **DENIED**.

---

[*]Chief Judge Wood and Judge Flaum did not participate in the consideration of this petition.